UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DONNA RUBIN,
                         Plaintiff,

        -against-                                    CIVIL CASE NO.:

COVERT AVENUE APARTMENTS,                            **COMPLAINT**
                         Defendant.

## PRELIMINARY STATEMENT

1.      Plaintiff Donna Rubin, an individual with a mobility disability who uses a

wheelchair, brings this action against Defendant for its refusal to allow a ramp to be

constructed at her residential apartment unit as a reasonable modification pursuant to the Fair

Housing Act. 42 U.S.C. § 3604(f)(3).

2.      Although construction of the ramp will come at no cost to Defendant, they

continue to deny Plaintiff's reasonable modification request while simultaneously attempting

to force Plaintiff to abandon the housing of her choice.

## JURISDICTION

3.      This is an action for declaratory, injunctive, and compensatory relief pursuant to

the Fair Housing Act.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343.

5.      This Court has jurisdiction to issue such relief pursuant to 28 U.S.C. §§ 2201 and

2202.

## VENUE

6.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

7.     Plaintiff is a resident of Lindenhurst, New York, in the Town of Babylon.

8.     Plaintiff lives in an apartment unit at Defendant Covert Avenue Apartments.

9.     Defendant Covert Avenue Apartments, Inc. ("Covert Avenue") is a residential apartment complex.

10.     Defendant Covert Avenue is located at 101-380 Forsythe Ave, Lindenhurst, NY 11757.

11.     Defendant Covert Avenue's corporate address is registered with the New York Department of State, Division of Corporations, as 1840 Hempstead Turnpike, East Meadow, New York 11554.

## STATEMENT OF FACTS

12.     Plaintiff has a mobility impairment caused by cellulitis, nerve damage, and damaged cartilage in her knees which requires her to use a wheelchair.

13.     Plaintiff and her mother began residing at Covert Avenue in November, 2000, in unit 242 ("Unit 242").

14.     Following her mother's death in April, 2006, Plaintiff assumed sole responsibility for the lease agreement.

15.     In February, 2011, Plaintiff first requested permission from Defendant to construct a ramp at Unit 242 with funding from the Nursing Home Transition and Diversion ("NHTD") waiver services program.

16.     Plaintiff's request was denied.

17.     Between 2011 and 2016, Plaintiff or advocates working with Plaintiff requested permission to install a ramp at least six additional times.

18.     Despite being told on at least one occasion that a ramp would be constructed, no ramp has ever been approved or constructed at Unit 242.

19.     On February 12, 2016, during a phone call with Disability Rights New York ("DRNY"), Susan Allen, property manager at Covert Avenue, requested that Plaintiff move to a fully accessible unit at a different apartment complex rather than continue to request that a ramp be constructed at Unit 242.

20.     On April 14, 2016, Defendant's Superintendent Warren Betzo spoke to Plaintiff and suggested that she move to a different apartment.

21.     On June 20, 2016, in a letter to DRNY, Defendant reiterated its request that Plaintiff move out of Unit 242.

22.     On August 5, 2016, Defendant stated that it was concerned "that even with a ramp, [Plaintiff] may require a handicap accessible unit so she can safely navigate her wheelchair inside the unit."

23.     On August 8, 2016, Defendant requested that Plaintiff provide medical documentation regarding her accessibility needs.

24.     In response, DRNY stated that Plaintiff does not require a fully accessible apartment, but in the interest of cooperation and facilitating quick resolution of this matter, Plaintiff would provide medical documentation of the same.

25.     On August 9, 2016, one of Plaintiff's treating medical providers provided confirmation in writing that Plaintiff is not in need of a fully accessible apartment, but is in need of a ramp.

26.     On October 11, 2016, Defendant again requested that Plaintiff move to an accessible unit at different apartment complex.

27.     Defendants stated "Doesn't it sound like [Plaintiff] requires a fully accessible unit? We certainly do not want to add to a situation which leaves [Plaintiff] in harm's way."

28.     On October 17, 2016, via letter, Defendant highlighted that Plaintiff's August 9, 2016, medical documentation states that Plaintiff "does not require an accessible apartment '*at this time*'".

29.     Plaintiff and Defendant explored the option of Plaintiff moving to a different unit, but it was found to not be financially feasible.

30.     On May 24, 2017, DRNY asked Defendant if it would consent to the construction of a ramp at Unit 242 if all costs were covered by an outside source.

31.     Defendant tentatively agreed that if all permitting, licensing, zoning, and other legal requirements were met, and the ramp was funded entirely by the NHTD waiver program, that it would consent to construction.

32.     Defendant also volunteered to commission an architect or engineer to determine the feasibility of a ramp at Unit 242, either at the front or rear entrance.

33.     DRNY began to work with Plaintiff's NHTD waiver service coordinator, Rosemary Schieber, to arrange for the NHTD funded ramp at Unit 242.

34.     On June 6, 2017, Mr. Betzo, Covert Avenue's Superintendent, visited Unit 242 and measured the door at the back entrance.

35.     On June 28, 2017, DRNY requested from Defendant documentation memorializing its oral agreement that if the funding was approved and legal requirements were met, it would allow the ramp to be constructed at Unit 242.

36.     Such documentation is required by the NHTD waiver program.

37.     On July 7, 2017, Defendant responded:

Once we receive confirmation from a registered architect that a ramp can be sited at Ms. Rubin's unit (in the front or back) which will meet State and Town Code, we will be in a better position to provide you with a letter of consent.

38.     Defendant also stated they were actively seeking an architect to analyze Unit 242, but had not yet secured one.

39.     On July 14, 2017, DRNY offered to have the architect frequently used by the NHTD environmental modification provider, Family Residences and Essential Enterprises, Inc. ("FREE"), survey Unit 242.

40.     On July 17, 2017, Defendant notified DRNY that it had secured a "ramp-knowledgeable architect," Mark Wittenberg, who would assess the site feasibility at Unit 242 on July 20, 2017.

41.     Defendant also requested the contact information for FREE's preferred architect so it could meet with him as well.

42.     On July 31, 2017, Defendant proposed that FREE utilize the report from Mr. Wittenberg in order to avoid duplicate efforts.

43.     On August 31, 2017, Defendant provided Mr. Wittenberg's architectural report to DRNY.

44.     Mr. Wittenberg's report indicates that building a ramp at the rear door of Unit 242 is feasible.

45.     Defendant also suggested that a cost estimate for the construction ramp be obtained at this time.

46.     On October 11, 2017, DRNY informed Defendant that in order to proceed with the NHTD waiver program funded ramp, FREE would need to utilize its own preferred architect.

47.     DRNY provided the name of the architect, Frank Restituto, and requested that Defendant provide their availability to meet with him for a site visit at Unit 242.

48.     On October 27, 2017, Mr. Restituto met with Ms. Scheiber, Mr. Betzo, and a representative from FREE at Unit 242.

49.     Mr. Restituto and Mr. Betzo agreed that a ramp would be most feasible at the rear entrance of Unit 242.

50.     On October 27, 2017, DRNY contacted Defendant via email and provided a timeline of the upcoming steps for constructing a ramp at Unit 242.

51.     On December 7, 2017, DRNY provided Mr. Restituto's scope of work for the construction of a ramp at Unit 242 to Defendant.

52.     On December 16, 2017, DRNY emailed Defendant as a follow-up to the December 7, 2018, email regarding the scope of work as no response had been received.

53.     On January 12, 2018, DRNY emailed Defendant again regarding the scope of work for a ramp at Unit 242.

54.     On January 24, 2018, Defendant responded by stating it would contact DRNY in writing early the next week concerning its issues.

55.     On January 25, 2018, DRNY responded by asking if it should "assume then that [Defendant has] objections to the scope of work or questions regarding it?"

56.     On January 25, 2018, Defendants' counsel responded "It is not the work as much as concerns about Ms. Rubin's needs."

57.     On February 5, 2018, Defendant indicated via telephone that it had "holistic" concerns, and would not consent to the scope of work for construction of a ramp at Unit 242 because a ramp at Unit 242 would constitute attempting to make a non-accessible apartment accessible.

58.     On February 7, 2018, Defendant memorialized the conversation from February 5, 2018, in writing.

59.     On March 1, 2018, DRNY addressed Defendant's concerns regarding Plaintiff's accessibility needs, confirming that both Plaintiff and her medical providers are confident she can live safely in Unit 242.

60.     DRNY also addressed Defendant's questions regarding ramp construction code requirements, ramp contractor selection, and the NHTD waiver program.

61.     DRNY offered to place Defendants in direct contact with a FREE representative in order to address any additional questions.

62.     On April 10, 2018, via letter, Defendants raised further questions about FREE, but had not availed themselves to the offer to communicate directly with FREE to have their concerns addressed.

63.     In the same letter, Defendants raised for the first time concerns about the removal of the ramp if Ms. Rubin no longer lives in Unit 242.

**Effect of Defendants' Failure to Accommodate on Plaintiff**

64.     Because Plaintiff is unable to independently leave Unit 242 without a ramp, she is only able to travel using medical transportation.

65.     Suffolk County Paratransit services will not pick up a ride who needs to be carried out of their residence due to stairs or other barriers.

66.     Medical transportation costs $150.00 per trip.

67.     Over the past several years, Plaintiff has spent approximately $30,000 on medical transportation in order to leave her home.

68.     Plaintiff's ability to be a member of her community has been significantly diminished without a ramp at Unit 242.

69.     Because she could not independently leave her home, Plaintiff was unable to regularly visit her fiancé.

70.     Plaintiff was unable to attend her fiancé's bedside prior to his death because she was unable to leave Unit 242.

71.     In May 2016, Plaintiff exhausted her personal funds following approximately three years of paying for medical transportation at $150.00 per trip.

72.     Kimberly Cahalan, a licensed mental health counselor who meets with Plaintiff on a weekly basis, has opined that Plaintiff has developed symptoms of depression because she cannot go outside or socialize.

73.     Ms. Cahalan stated that Plaintiff's forced isolation has caused her to put her life goals on hold.

74.     Ms. Cahalan expressed that she is very concerned about the negative impact on Plaintiff's mental and physical health that isolation in Unit 242 has had.

## FIRST CLAIM FOR RELIEF

## THE FAIR HOUSING ACT 42 U.S.C.A. § 3604 – FAILURE TO PERMIT A REASONABLE MODIFICATION

75.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

76.     The Fair Housing Act ("FHA") states it is illegal discrimination to "refuse to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modification may be necessary to afford such person full enjoyment of the premises." 42 U.S.C.A. § 3604(f)(3)(A).

77.     Defendants have discriminated and continue to discriminate against Plaintiff by refusing to permit Plaintiff to reasonably modify her residence in order to make it accessible to her.

78.     Defendants' discrimination denies Plaintiff full enjoyment of the premises.

79.     Defendants' conduct is a present and ongoing violation of the FHA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as set forth below:

1.  Issue a declaratory judgment that Defendant's conduct has subjected and continues to subject Plaintiff to discrimination in violation of the FHA;

2.  Order Defendant's to promptly provide the required consent for a ramp to be constructed pursuant to the NHTD waiver program at Unit 242;

3. Order, in the alternative should funding pursuant to the NHTD waiver program no longer be available at the time of the Court's Order, Defendant to promptly construct, at its own expense, a ramp at Unit 242;

4. An award of compensatory damages to Plaintiff to be determined by the Court;

5. An award of reasonable attorneys' fees and costs; and

6. Such other relief as the Court deems just and proper.

Dated: May 29 2018

Rochester, New York

By: /S/ Jessica Barlow_____

JESSICA BARLOW
JB2194

SIMEON GOLDMAN
SG9920

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiffs
44 Exchange Blvd, Suite 110
Rochester, New York 14614
Phone:  518-512-4841
Fax:  585-348-9823